```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COSMETIQUE, INC., an Illinois      )
corporation,                       )
                                   )
            Plaintiff,             )
                                   )
      vs.                          ) Civil Action No. 08-1282
                                   )
UNREAL MARKETING SOLUTIONS,        )
INC., a Pennsylvania               )
corporation,                       )
                                   )
            Defendant/Third-       )
            Party Plaintiff,       )
                                   )
      vs.                          )
                                   )
CLASH-MEDIA ADVERTISING, INC.,     )
                                   )
            Third-Party            )
            Defendant.             )
```

**MEMORANDUM**

**I. INTRODUCTION**

Before the Court is the motion of Third-Party Defendant, Clash-Media Advertising, Inc. ("Clash-Media"), to dismiss Counts II and III of the third-party complaint filed by Defendant/Third-Party Plaintiff, Unreal Marketing Solutions, Inc. ("Unreal Marketing"), under Fed.R.Civ.P. 12(b)(6) for failure to state

1

claims upon which relief may be granted.[1] For reasons which follow, the motion to dismiss will be granted.

## II. PROCEDURAL HISTORY

Plaintiff, Cosmetique, Inc. ("Cosmetique"), filed this diversity action against Unreal Marketing on September 12, 2008, asserting five claims for breach of contract. (Document No. 1). Unreal Marketing filed an answer to Cosmetique's complaint on March 24, 2009, together with two counterclaims for breach of contract. (Document No. 7).

On August 31, 2009, Unreal Marketing filed a third-party complaint against Clash-Media, asserting claims for breach of contract (Count I), negligence (Count II) and fraud (Count III).[2] (Document No. 18). On October 7, 2009, Clash-Media filed an answer to the third-party complaint and counterclaims for breach of contract and unjust enrichment. (Document No. 26). On the same day, Clash-Media filed the present motion under Fed.R.Civ.P.

---

[1] When presented with a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the allegations in the complaint as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading of the allegations indicates that relief may be warranted. Umland v. PLANCO Financial Service, Inc., 542 F.3d 59, 64 (3d Cir.2008).

[2] Claims for breach of contract, negligence and fraud also were asserted against Connexus Corporation in Unreal Marketing's third-party complaint. However, on November 19, 2009, Unreal Marketing filed a Notice of Voluntary Dismissal as to Connexus Corporation. (Document No. 32).

2

12(b)(6), seeking the dismissal of Unreal Marketing's third-party claims for negligence and fraud. (Document No. 24).

On November 30, 2009, Unreal Marketing filed a Suggestion of Bankruptcy. (Document No. 33). Thus, the claims asserted against Unreal Marketing by Cosmetique, and the counterclaims asserted against Unreal Marketing by Clash-Media, are stayed pursuant to 11 U.S.C. § 362. However, Unreal Marketing's counterclaims against Cosmetique, as well as its third-party claims against Clash-Media, are not subject to the Bankruptcy Code's automatic stay provision. See Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194 (3d Cir.1992).

### III. FACTUAL ALLEGATIONS

The allegations of Unreal Marketing's third-party complaint against Clash-Media may be summarized as follows:

**General Allegations**

Cosmetique, a direct marketer of cosmetics, entered into a contract with Unreal Marketing for the provision of Internet marketing services to generate new customers. One of the marketing programs conducted by Cosmetique through Unreal Marketing was called the Bill Me Later Program. In connection with its contract with Cosmetique, Unreal Marketing entered into a contract with Clash-Media pursuant to which Clash-Media agreed to obtain legitimate leads for Cosmetique's Bill Me Later Program. Based on assertions by Cosmetique, Unreal Marketing

believes that a substantial number of leads generated by Clash-Media for Cosmetique were fraudulent. As a result of the fraudulent leads, Cosmetique has refused to pay Unreal Marketing for services rendered. In addition, Cosmetique asserts that it has incurred damages as more fully set forth in its complaint. (Document No. 18, ¶¶ 7-12, 14).

**Breach of Contract**

Clash-Media breached its contract with Unreal Marketing by failing to ensure that fraudulent leads would not be sent to Unreal Marketing and Cosmetique.[3] As a result of Clash-Media's breach of contract, Unreal Marketing has incurred damages of at least $160,364.75, representing the amount that Cosmetique has refused to pay Unreal Marketing for leads generated by Clash-Media. Further, as a result of its breach of contract, Clash-Media is liable to Unreal Marketing for any damages that Unreal Marketing may be required to pay Cosmetique in this lawsuit. (Document No. 18, ¶¶ 14-18).

**Negligence**

Prior to entering into the contract relating to Cosmetique's Bill Me Later Program, Clash-Media represented to Unreal

---

[3] In connection with the third-party claim for breach of contract, it is also asserted that Clash-Media breached the standard terms and conditions of its contract with Unreal Marketing by continuing to work directly, or indirectly, with Cosmetique to advertise its products. (Document No. 18, p. 3, ¶ 16).

4

Marketing that it would take appropriate steps to ensure that legitimate leads were generated, and Unreal Marketing relied on this representation in entering into the contract with Clash-Media. Clash-Media owed a duty to Unreal Marketing to obtain legitimate leads for Cosmetique's Bill Me Later Program. Clash-Media breached this duty by providing fraudulent leads to Unreal Marketing and Cosmetique. As a result of Clash-Media's negligence, Unreal Marketing has sustained the damages alleged in its claim against Clash-Media for breach of contract. (Document No. 18, ¶¶ 20-25).

**Fraud**

Clash-Media's representation that it would take appropriate steps to ensure that leads generated for Cosmetique's Bill Me Later Program were legitimate was false, and Clash-Media knew it was false when the representation was made. As a result of Clash-Media's intentional misrepresentations, Unreal Marketing has sustained the damages alleged in its claim against Clash-Media for breach of contract. (Document No. 18, ¶¶ 27-30).

**IV. LEGAL STANDARD**

In <u>Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79 (3d Cir.2001), a diversity case, a former joint venturer sued the other, and one of its officers and directors, alleging breach of contract, breach of fiduciary duties, misappropriation of trade secrets and civil conspiracy, and a jury found in favor

of the plaintiff. On appeal, one of the defendants argued, among other things, that the district court had erred in allowing the jury to consider a separate breach of fiduciary duty claim for behavior that was covered by the parties' agreement and, therefore, was subsumed in the jury charge and verdict for breach of contract. In discussing this argument, the Court of Appeals for the Third Circuit noted:

\* \* \*

> Pennsylvania courts use two methods to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract: the "gist of the action" test and the "economic loss doctrine" test. (footnote omitted). Under the "gist of the action" test, to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. <u>Redevelopment Auth. of Cambria County v. International Ins. Co.</u>, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996)(en banc)(quoting <u>Phico Ins. Co. v. Presbyterian Med. Servs. Corp.</u>, 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." <u>Bash v. Bell Telephone Co.</u>, 411 Pa.Super. 347, 601 A.2d 825, 830 (1992).
>
> This Court described the "economic-loss doctrine" test in <u>Duquesne Light</u> as "prohibit[ing] plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." 66 F.3d at 618. <u>Duquesne Light</u> explained further that a plaintiff should be limited to a contract claim "when loss of the benefit of a bargain is the plaintiff's sole loss." <u>Id</u>. (quotation marks omitted). Both parties argue that both tests support their positions. For the reasons set forth in the margin, we

focus primarily on the "gist of the action" test. (footnote omitted).

\* \* \*

247 F.3d at 103-04.

Like the parties in Bohler-Uddeholm, Clash-Media asserts that Unreal Marketing's third-party claims for negligence and fraud are barred by both the gist of the action doctrine and the economic loss doctrine. (Document No. 25, pp. 4-8). For the reason noted by the Third Circuit in Bohler-Uddeholm, this Court also will focus on Clash-Media's argument for dismissal based on the gist of the action doctrine.[4]

## V. DISCUSSION

Generally, the gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract

---

[4]In focusing on the gist of the action doctrine, rather than the economic loss doctrine, the Third Circuit in Bohler-Uddeholm stated:

\* \* \*
The application of the economic-loss doctrine to the instant case does not quite fit because that doctrine developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself. (citations omitted). The "gist-of-the-action" test is a better fit for this non-products liability case.
\* \* \*

247 F.3d at 104 n.11.

7

claims into tort claims. See eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa.Super.2002).

With respect to Unreal Marketing's third-party claim for negligence, which is based on an alleged breach of Clash-Media's duty to Unreal Marketing to take appropriate steps to ensure that legitimate leads for Cosmetique's Bill Me Later Program were generated, it is clear that the duty to provide legitimate leads arose out of the contract between Unreal Marketing and Clash-Media rather than a duty "imposed as a matter of social policy." Id. There simply is no basis for finding that Clash-Media's alleged negligence is the gist of this action with the parties' contract being collateral. Thus, the third-party claim for negligence, which seeks the identical damages sought for Clash-Media's alleged breach of its contract with Unreal Marketing, is barred by the gist of the action doctrine.

Turning to the third-party claim for fraud, Unreal Marketing asserts that the gist of the action doctrine does not bar this claim because it is based on fraud in the inducement rather than fraud in the performance of the contract. Specifically, Unreal Marketing asserts: "Fraudulent misrepresentations that induce a party to enter into an agreement implicate society's interest in preventing the formation of contracts based on fraud.... The tort claim is the gist of these actions." (Document No. 29, p.

8

4). After consideration, the Court finds this argument unpersuasive.

In <u>Tsudis Chocolate Co. v. FGH Consulting USA, Inc.</u>, No. 02:07cv1574, 2008 WL 219348 (W.D.Pa.Jan.25, 2008), the plaintiff filed suit against the defendant for breach of two separate oral contracts by failing to pay for chocolate products that the defendant ordered and the plaintiff manufactured at the defendant's direction. In response, the defendant filed counterclaims against the plaintiff for breach of contract and fraudulent misrepresentation. The plaintiff moved to dismiss the counterclaim for fraudulent misrepresentation under the gist of the action doctrine, and the motion was granted. In discussing this doctrine, the district court noted:

\* \* \*

> Many courts have struggled with whether the "gist of the action" doctrine applies to fraud cases. <u>See</u> <u>eToll</u>, 811 A.2d 10. In determining whether the "gist of the action" doctrine applies, a court must determine whether the source of the duties breached were "intertwined" with obligations under the contract, or if they were merely collateral. <u>Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.</u>, 40 F.Supp.2d 644, 651 (W.D.Pa.1999). The court in <u>eToll</u> explained the sometimes blurred distinction: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." <u>eToll</u>, 811 A.2d at 14 (additional citation omitted).
>
> Here, FGH argues that its fraud claim is collateral to the contract because "prior to the formation of the contract, Tsudis made fraudulent misrepresentations to FGH to induce FGH to contract with Tsudis for the manufacture and shipment of its chocolate product." Resp. at 4.

9

While it is true that the gist of the action doctrine will not bar all fraud in the inducement claims, "the particular theory of fraud - whether it lies in inducement or performance - is not dispositive." <u>Guy Chemical Co., Inc. v. Romaco N.F.</u>, 2007 WL 184782 (W.D.Pa.Jan.22, 2007) at *5-6; <u>See also</u> <u>Owen J. Roberts Sch. Dist. v. HTE, Inc.</u>, 2003 WL 735098 n.4 (E.D.Pa.Feb.28, 2003)(applying gist of the action doctrine to a fraud in the inducement claim where the pre-contractual statements regarding ability to supply software in a timely manner were ultimately addressed in the contract); <u>Galdieri v. Monsanto Co.</u>, 245 F.Supp.2d 636, 650 (E.D.Pa.2002)(dismissing the plaintiff's fraudulent inducement claim under the gist of the action doctrine where the alleged fraud was that the defendant never intended to perform). Rather, the test to be applied to claims of fraud in the inducement remains the same as that set forth in <u>eToll</u>, <u>Id</u>.

A tort claim is barred by the gist of the action doctrine if: (1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. <u>Williams v. Hilton Group, PLC</u>, 261 F.Supp.2d 324, 327-28 (E.D.Pa.2003)(<u>citing</u> <u>eToll</u>, 811 A.2d at 19).

The Court acknowledges, as FGH argues, that it must exercise caution in making a determination regarding the gist of the action at this early stage of the case. <u>See</u> <u>Weber Display and Packaging v. Providence Washington Insurance Co.</u>, 2003 WL 329141 (E.D.Pa.Feb.10, 2003). However, the Court finds it evident from a review of the Counterclaim that FGH's claims of fraud are based in contract.

\* \* \*

2008 WL 219348, at \*2.

The basis of Unreal Marketing's fraud claim against Clash-Media, *i.e.*, that Clash-Media misrepresented its intent to take appropriate steps to ensure that leads generated for Cosmetique's Bill Me Later Program were legitimate, is closely intertwined

10

with Clash-Media's obligations under its contract with Unreal Marketing and the damages Unreal Marketing seeks for Clash-Media's alleged misrepresentation are the identical damages sought for Clash-Media's breach of contract.  Under the circumstances, the Court concludes that Unreal Marketing's fraud claim against Clash-Media is an impermissible duplication of its breach of contract claim against Clash Media, and, therefore, the fraud claim is barred by the gist of the action doctrine.  While the Court acknowledges that there are cases in which a fraud in the inducement claim properly may accompany a breach of contract claim, this is not such a case.[5]

_____
William L. Standish
United States District Judge

Date: December 16, 2009

---

[5] For example, in Bohler-Uddeholm, supra, the Third Circuit held that the plaintiff's tort claim - a claim for breach of fiduciary duty - was separate from its breach of contract claim, and, therefore, the claim was not barred by the gist of the action doctrine.  In so finding, the Third Circuit noted that the fiduciary duty imposed by Pennsylvania law on the defendant in that case, a majority shareholder in a joint venture which had sole and virtually exclusive control over the object of the venture, "went well beyond the particular obligations in the [parties'] Agreement itself" and was imposed as a matter of social policy rather than mutual consensus, i.e., the larger social policy "requiring fair dealing and solicitude from a majority shareholder to minority shareholders in a joint venture."  247 F.3d at 104-05.  The present case does not present an analogous situation.